Dainey **BATSON, Jr., Howard Harris, Mike Gunter, the Sycamore Valley Development Company and Dixieland Company, Plaintiffs-Appellees,**

v.

**PLEASANT VIEW UTILITY DISTRICT, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section.

April 27, 1979.

Certiorari Denied by Supreme Court Jan. 21, 1980.

W. R. Baker and Sam M. Balthrop, Baker & Balthrop, Ashland City, for plaintiffs-appellees.

Cecil D. Branstetter, Nashville, William G. Wilkinson, Ashland City, for defendant-appellant.

OPINION

LEWIS, Judge.

Plaintiffs filed their complaint challenging the right of defendant to unilaterally modify written contracts entered into between plaintiffs and defendant by imposing additional fees over and above those expressly stated in the contracts.

The Chancellor entered a judgment in favor of the plaintiffs from which the defendant has appealed.

The plaintiffs are land developers of residential subdivisions within the defendant utility district. They contracted with the defendant to construct and install water lines and appurtenances in the subdivisions they were developing. In exchange, the defendant agreed to assume full responsibility for the operation of the system to furnish water at standard rates to residents in the developments and, at the end of a one-year warranty period, to maintain the lines and appurtenances.

Above the requirement of installation at contractors' cost and the assumption of maintenance and service performance by the defendant, the contracts contained an additional requirement of a meter deposit to be paid to the defendant for each meter installed.

When a majority of the waterlines had been constructed and thereafter accepted by the defendant, the defendant added a water service fee of $500.00 per residence. The fee applied to all new residential installations and all lots in existing subdivisions that were not presently using water.

At trial, the defendant contended that it had the right to make such additional charges as were necessary to insure its financial stability. At that time the defendant legitimately required additional funding to meet obligations to its bond holders.

The plaintiffs contended that the additional "tapping fee" was in violation of their contractual obligations with the utility district.

The Chancellor determined the issue below to be whether or not the contract prohibited the defendant from assessing a water service fee on plaintiffs.

The Chancellor found:

The "water service fee" as per the Stipulation is a tapping fee "chargeable only upon new residential installation of water service connections". Further the Stipulation states that "it is charged only upon new installations" and "the tapping fee is imposed for the purpose of providing funds for expansion of the system and providing funds for the payment upon the system's bonded indebtedness." It follows from a reading of the Stipulation that all new water service connections are to pay the water service fee; that it is imposed on new installations and provides funds for the expansion of the system.

Thus, in general, the purpose of the water service fee was accomplished by the contractors upon the installation of their systems. The contracts between Plaintiff contractors and the Defendant Utility District spell out in succinct language, accompanied by technical drawings, that the contractors are to install all necessary pipes, connections, valves, bends, tees, blocks, etc. The manner of installation, subject to inspection, was also made a part of these contracts. The meters were to be installed at the contractors' cost. After the installation and inspections were completed the ownership of these water systems was then to be transferred to the Pleasant View Utility District. Then and thereafter if a deposit was made for the individual meter the water would be delivered to the customer by the Utility District.

This Court is of the opinion that the effect of these contracts was that the subdivision contractors were to build extensions onto the Pleasant View Utility District's water system; and after the completion of the same and delivery of ownership to the Utility District, the Utility District would then furnish water through the individual meters of these contractor-added service lines. The Plaintiffs, in effect, had paid all the costs for their lines that the "water service fee" was imposed to cover.

The defendant has assigned two (2) errors on appeal:

1. The learned Chancellor erred in construing the contracts between Appellant District and Appellee Contractors as precluding Appellant from requiring payment by Appellees of tapping fees adopted to be uniformly charged to all customers desiring to tap onto Appellant's main to bring water onto lots not previously purchasing water from Appellant.

2. The learned Chancellor erred, in view of the financial condition of the District, in failing to hold, that, under the financial situation in which it found itself, that the contract was subject to the pre-existing power and obligation of the Appellant District's Commissioners to fix and change rates in accordance with the dictates of their discretion and to charge such rates and charges to all customers in order to discharge Appellant District's obligations to its Bond holders.

Pursuant to T.C.A. § 27–303, cases tried in a court of record, without the intervention of a jury, come to this Court where the hearing of any issue of fact or of law shall be de novo upon the record of the trial court, accompanied by a presumption of correctness unless the preponderance of the evidence dictates otherwise.

The facts of this case raise two basic issues:

1. whether or not the terms of the contracts preclude the imposition of additional "tapping on" fees; and,

2. whether or not, despite the contractual terms, the Pleasant View Utility District has the power to unilaterally impose additional fees on the developers.

██ The contracts in this cause are complex, involving numerous documents and technical requirements. By clause 5 of the contracts proper, "CONTRACT RESIDENTIAL", the "PLEASANT VIEW UTILITY DISTRICT STATEMENT OF POLICY—RESIDENTIAL" attached thereto is incorporated by reference:

5. After determining that all pipe and other materials as well as workmanship meets all the requirements set forth in the engineers specification and, the Districts Statement of Policy, the second party agrees to assume responsibility for the operation of the new system, and at the end of the one-year warranty, will assume responsibility for the maintenance of lines and appurtenances covered by this agreement.

The Statement of Policy contains the following:

A. The District agrees that developers may tap or connect to existing waterlines and receive water service at the point or points where connections are made.

Further:

Prior to receiving service through an individual meter, a deposit shall be made to Pleasant View Utility District in an amount in accordance with meter deposit rates in effect at that time.

Defendant recognizes the distinction between a tapping fee and a meter deposit. In its brief, defendant notes:

There is no mention in the Statement of Policy of tapping or "water service" fees for the simple reason that at the time of promulgation of this policy early in 1968, no such charges were imposed by Appellant District; they were not imposed until 1973.

As part of the consideration for the contracts, the defendant clearly granted the developers the right to tap or connect with existing waterlines. The contracts are not ambiguous. They set out the rights and obligations of the parties. No fee is set out for "tapping on" and as per the defendant's brief, quoted above, such a fee was not contemplated in 1972 when the latest of these contracts were executed.

Unless there is some supervening ground(s) on which the defendant can rightfully impose a charge contrary to that expressly stated in the contracts, the judgment of the Chancellor must be affirmed.

██ Defendant asserts correctly, in principle, that:

No governmental entity can by contract deprive itself of inherent powers necessary to the performance of its functions or of power or duty imposed upon it by prior express statutory or constitutional provision. *Douglas v. Kentucky*, 168 U.S. 488, 42 L.Ed. 553 (1897); *Stone v. Mississippi*, 101 U.S. 814, 25 L.Ed. 1079 (1880).

T.C.A. §§ 6–2610(f) and 6–2625 state, in effect, that every utility district organized under Tennessee law is both empowered to fix and revise all its rates and charges and required to maintain the amounts of such rates and charges so they will always be adequate not only to maintain its system but also to pay when due all bonds and interest thereon, including reserves therefor.

The fact that a utility district, pursuant to T.C.A. § 6–2610(f), has the power to "fix, maintain, collect and revise rates and charges for any service" and, pursuant to T.C.A. § 6–2625, has the right to revise rates, fees, tolls or charges whenever neces-

**582**

sary to insure that the system remains self supporting does not dispose of the issue in this appeal.

A city operates its utilities in a proprietary or individual capacity and not in its legislative or governmental capacity. *City of Knoxville v. Heth*, 186 Tenn. 321, 210 S.W.2d 326 (1948). A contract made by a city in the course of its operation of a utility is in its proprietary capacity. *City of Shelbyville v. State ex rel. Bedford County*, 220 Tenn. 197, 415 S.W.2d 139 (1967); *Bybees Branch Water Ass'n v. Town of McMinnville*, 206 Tenn. 372, 333 S.W.2d 815 (1960).

In *Bybees Branch Water Ass'n., supra*, the court stated:

> The governing body of a municipal corporation, or a municipal board or officer having authority to contract, may bind successors in office by a contract made in the exercise of proprietary or business powers, but may not by contract prevent or impair the exercise by successors of legislative functions or governmental discretionary powers. 63 C.J.S. Municipal Corporations § 987, p. 549. *Id.* at 375, 333 S.W.2d at 816.

T.C.A. § 6–2607 states that an incorporated district shall be a municipality or public corporation. T.C.A. § 6–2610(d) grants any district the power to make and enter into contracts.

As a "municipality" operating its utility in a proprietary or individual capacity, the rules that control a private individual or corporate business generally apply. *City of Shelbyville, supra.*

It has been held that state laws permitting a municipality to contract in its proprietary capacity suspend the municipality's power to regulate rates during the contract period. *St. Cloud Public Service Co. v. City of St. Cloud*, 265 U.S. 352, 44 S.Ct. 492, 68 L.Ed. 1050 (1924).

By acting in its proprietary capacity, the defendant has obligated itself by contract to provide "tapping on" without charge. This is not in abrogation of its statutory authority to fix or revise rates or charges in its legislative or governmental capacity.

The addition of "tapping on" charge constitutes a unilateral modification of the contracts. Modification requires the mutual assent and meeting of the minds required to contract. *Balderacchi v. Ruth*, 36 Tenn. App. 421, 256 S.W.2d 390 (1952).

Since the contracts are binding upon all parties, were entered into by the defendant in its proprietary capacity, and are not capable of modification without the consent of each party, it is clear that the addition of the "tapping on" charge is in abrogation of the original contracts.

A careful reading of the Chancellor's Memorandum Opinion of November 23, 1977 indicates that he held for the plaintiffs on the ground that, since the purpose of the added fee was for the installation and expansion of the water system, plaintiffs, in building the system, in effect, completed the underlying purpose for the additional charges and thus "had paid all the costs for their lines that the 'water service fee' was imposed to cover." The result, under the Chancellor's analysis, is that whether or not the contractors would be liable to pay a unilateral increased charge contrary to the contracts, the contractors have paid the charge by satisfying the underlying purpose thereof.

We believe the true issue is the right of the defendant to contract away its power to impose charges such as the "tapping on" charge in this case. Having determined that the defendant can so contract, we find it unnecessary to meet the question of the form of payment that can be made by the contractor under a factual situation where payment may be required.

For the reasons set out the judgment of the Chancellor is affirmed. Costs are taxed to the defendant.

SHRIVER, P. J., and TODD, J., concur.