CITY OF PARSONS, Tennessee, a Municipal Corporation in Decatur County, Tennessee, Plaintiff-Appellant,

v.

PERRYVILLE UTILITY DISTRICT, a Utility District in Decatur County, Tennessee, Defendant-Appellee.

Court of Appeals of Tennessee, Western Section.

Dec. 5, 1979.

Certiorari Denied by Supreme Court Feb. 19, 1980.

J. N. Smith, Parsons, for plaintiff-appellant.

Edwin C. Townsend, Robert N. Townsend, Townsend & Townsend, Parsons, for defendant-appellee.

EWELL, Judge.

This is an appeal by the City of Parsons from a summary judgment dismissing its suit against the Perryville Utility District. The issue is the validity of a forty-five year contract between the City and the District under which the City is to sell water to the District at a specified fixed rate subject to modification at the end of every five year period based upon increased or decreased costs, but excluding increased capitalization costs. The lower court granted summary judgment in favor of the District dismissing the suit, apparently holding that the City was collaterally estopped by a consent decree entered in a former suit between the parties involving the same contract. The City appealed assigning seven errors, the following three of which this Court deems controlling:

(1) The Court erred in holding that the Plaintiff could be estopped to dispute the validity of the contract.

(2) The Court erred in finding the Plaintiff collaterally estopped by prior consent decree entered without prejudice to either party.

(3) The Court erred in failure to consider the power and authority of Plaintiff to execute the contract.

The material facts are undisputed. On October 8, 1964, the City and the District

entered into a "Contract For Sale of Water" whereby the City agreed to furnish the District water for sale by the District through its water supply distribution system to its water users within the District. The relevant portions of the contract are as follows:

*The City Agrees:*

1. (Quality and Quantity) To furnish the District, at the point of delivery hereinafter specified, during the term of this contract or any renewal or extension thereof, potable treated water meeting applicable purity standards of the Tennessee Department of Public Health in such quantity as may be required by the District, not to exceed 75,000 gallons per day.

. . . . .

*The District Agrees:*

1. (Rates and Payment Date) To pay the City, not later than the 15th day of each month, for water delivered in accordance with the following schedule of rates:

a. Twenty-five (25¢) Cents per each One Thousand (1,000) gallons for the first Thirty Thousand (30,000) gallons each day, said daily quantity to be considered the average daily quantity each calendar month.

b. Thirty (30¢) Cents per each One Thousand (1,000) gallons for all quantities in excess of Thirty Thousand (30,000) gallons each day, said daily quantity to be considered the average daily quantity each calendar month.

. . . . .

*It is further mutually agreed between the City and the District, as follows:*

1. (Term of Contract) That this contract shall extend for a term of 45 years from the date of the initial delivery of any water by the City to the District and, thereafter, may be renewed or extended for such term, or terms, as may be agreed upon by the City and District.

. . . . .

5. (Modification of Contract) That the provisions of this contract pertaining to the schedule of rates to be paid by the District for water delivered are subject to modification at the end of every (5) year period. Any increase or decrease in rates shall be based on a demonstrable increase or decrease in the costs of performance hereunder, but such costs shall not include increased capitalization of the City system. Other provisions of this contract may be modified or altered by mutual agreement.

6. (Regulatory Agencies) That this contract is subject to such rules, regulations, or laws as may be applicable to similar agreements in the State of Tennessee and the City and District will collaborate in obtaining such permits, certificates or the like, as may be required to comply therewith, if any.

. . . . .

The parties operated under the original contract until 1971 when by agreement the rate was raised from $.25 to $.30 for each 1,000 gallons for the first 30,000 gallons each day and from $.30 to $.35 for each 1,000 gallons in excess of 30,000 gallons each day.

By letter of May 24, 1972, the Assistant Commissioner of the Environmental Health Services of the Department of Public Health of the State of Tennessee notified the City that upon investigation of its public water supply "it has been determined that the public water supply serving the City of Parsons, the Town of Decaturville, and the Perryville Utility District is an actual or potential menace to health because of the improper location, quality of source, improper supervision and inefficient operation". The City was ordered to take specific action to correct the deficiencies within specified time periods. The required improvements were ultimately made at a cost in excess of $820,000.00 including the construction of a new water treatment plant costing more than $600,000.00. The funds were provided by a loan from the State of Tennessee under the provisions of the "Water Works Construction Loan Act of 1974".

On or about November 27, 1972, the City purported to unilaterally terminate its contract with the District because of the deficiencies in the system and the anticipated cost of correcting the same. On December 29, 1972, the District filed suit against the City in the Chancery Court of Decatur County to restrain the City from canceling or altering the terms of the contract and seeking entry of an order requiring the City to specifically perform under the terms of the contract. That litigation was terminated on or about November 11, 1974, by the entry of a "Consent Judgment" as follows:

Comes the parties through their respective attorneys of record on this the 11th day of November, 1974, and announced to the Court that the Plaintiff and Defendant have by consent agreed to enter an order in this cause to provide as follows:

1. That the Temporary Restraining Order issued by the Honorable Grady F. Crawley on the 18th day of December, 1972, restraining the Defendant, its officers, agents, employees, or representatives, from taking any action under the purported Resolution No. 11–72, adopted November 27, 1972, and restraining the Defendant from discontinuing water service provided thereby, be, and the same shall be made permanent.

2. That the parties agree and recognize that the Contract between the Plaintiff and Defendant dated August 8, 1964 (sic: October 8, 1964), is valid and effective according to its terms, and the Defendant agrees that it will not terminate, cancel or alter said Contract, or attempt to do so, without the consent and agreement of the Plaintiff, and the Plaintiff is entitled to have the same specifically enforced.

3. That except as provided herein, said suit shall be dismissed at the costs of the Defendant, without prejudice to the Plaintiff to bring any appropriate action against the Defendant to require specific performance of said Contract, or any appropriate action should said Restraining Order be violated.

And it appears to the Court that said agreement should be approved by and made the judgment of the Court in this suit:

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that said Consent Agreement as set forth in the premises, be, and the same is hereby approved by the Court, and hereby made the order and judgment of this Court, all without prejudice to either party.

The defendant shall pay all costs of this cause.

The parties continued to operate under the contract, as amended in 1971, until October 10, 1977, when the City instituted this litigation in the Chancery Court of Decatur County seeking, in the alternative, to (1) have the contract declared null and void, or (2) have the rights of the parties under the contract declared and decreed upon the principles of equity, or (3) require the District to negotiate and modify the contract to reflect the actual cost of water, including but not limited to the increased costs of capitalization. The District answered the City's complaint denying that the City was entitled to any relief, and, in addition, filed a counter-claim seeking (1) enforcement of the restraining order made permanent by the Consent Judgment and (2) specific performance of the contract. After the City answered the counter-claim, the District filed its "Motion for Dismissal and/or Motion for Summary Judgment". The City responded with its answer supported by four affidavits purporting to establish, among other things, that for the fiscal year ending June 30, 1977, the actual cost of water processed by the City was $.65 per 1,000 gallons and that customers of the District were being charged $5.50 for the first 2,000 gallons while direct customers of the City were being charged $6.85 for the first 2,000 gallons. The direct customers of the City were paying an additional $1.35 for the first 2,000 gallons of water in order to defray the expense of capitalization incurred in correcting the deficiencies in the system as required by the Tennessee Department of Public Health, which capitalization costs could not be passed on to the District under the terms of the contract.

The Trial Court first overruled the District's motions but subsequently sustained the motion for summary judgment dismissing the City's suit pursuant to the following finding:

In this cause the defendant, Perryville Utility District, moved for a Summary Judgment in that the complaint failed to state a claim upon which relief can be granted, and upon collateral estoppel as set forth in *King v. Brooks*, 562 S.W.(2d) 422.

The Court finds from the pleadings, the briefs and the record that a bona fide contract was entered into by the parties August 8th, 1964 (sic: October 8, 1964), and was adhered to in every respect until the 27th day of November, 1972, when the plaintiff attempted to unilaterally terminate said contract. Thereafter a suit was instituted in this Court which resulted in a consent decree between the parties on the 11th day of November, 1974.

The parties have operated under and by virtue of said contract and consent decree subsequent thereto.

The present suit was filed charging the contract was from its inception null and void and embarrassed the City in its governmental function and was violative of Section 6–1421 of the Tennessee Code Annotated.

The Court finds upon the execution of the contract and upon the entry of the consent decree neither of the objectionable conditions set out in the complaint and amended complaint existed.

There appears to be a serious condition subsequently appearing consisting of the charge for water to the district occasioned by subsequent expansion and costs incident thereto. The Court finds this to be the only difference between the parties. This difference can be settled within the framework of the contract upon the adjustment of the rates. If the adjustment is not reached amicably, or can not be arbitrated it may be necessary to have a hearing concerning such issue, however at the present time this question is moot.

The Court, therefore, finds the motion for a Summary Judgment is sustained and the plaintiff's suit is dismissed.

Prepare decree in accordance with the findings herein and submit for entry.

This, February 19, 1979.

From the above we are unable to determine the legal principle upon which the suit was dismissed, but from the entire record we conclude that the Chancellor gave great weight to the defense of collateral estoppel based upon the Consent Judgment entered in the former litigation and was persuaded to reverse his original action in overruling the motion for summary judgment by the rationale of the opinion of Justice Cooper in the case of *King v. Brooks*, 562 S.W.2d 422 (Tenn.1978). We note that the Chancellor in dismissing the suit stated that the differences between the parties could be settled by the adjustment of the rates within the framework of the contract but acknowledged that it might become "necessary to have a hearing concerning such issue". However, the Chancellor failed to address the fundamental issue upon which the parties obviously cannot agree, to wit: whether or not the City has the legal authority to increase the rates to reflect the increased expense of capitalization notwithstanding the express provisions of Section no. 5 of the contract. Until this dispute is resolved there can be no reasonable expectation that the parties will reach an amicable settlement of their differences, and we therefore will address this issue which is determinative of the appeal.

The contract in question was entered into pursuant to the statutory authority set forth in Chapter 68 of the Public Acts of 1933 codified as Sections 6–1408 through 6–1439 of *Tennessee Code Annotated*. Sections 6–1408 and 6–1413 authorize the City to own, operate, supervise and control the system; and contracts in the nature of the one here involved are contemplated in Section 6–1423 which provides, in part, as follows:

6–1423. Service contracts.—Any city or town operating a waterworks and/or

sewerage system under the provisions of Sections 6–1408—6–1439 is authorized and empowered to contract with one or more other cities or towns or with corporations, firms, or individuals to furnish service by such works, and to collect charges for the same, and such other cities, towns, corporations, firms and individuals, are authorized to enter into such contracts for said services, but only to the extent of the capacity of the works, without impairing the usefulness thereof to the owners. . . .

The duty and power of the City with reference to the determination of rates is specifically addressed in T.C.A. 6–1421(a) which provides, in relevant part, as follows:

6–1421. Determination of rates.— Minimum base rate charge considered a local tax.—(a) The governing body of any city or town acquiring and operating a waterworks and/or sewerage system under the provisions of Sections 6–1408—6–1439 shall have power, and it shall be its duty, by ordinance to establish and maintain just and equitable rates and charges for the use of and the service rendered by such waterworks and/or sewerage system, to be paid by the beneficiary of the service. Such rates and charges shall be adjusted so as to provide funds sufficient to pay all reasonable expenses of operation, repair, and maintenance, provide for a sinking fund for payment of principal and interest of bonds when due, and maintain an adequate depreciation account, and they may be readjusted as necessary from time to time by amendment to the ordinance establishing the rates then in force. . . .

T.C.A. Sections 6–1436 and 6–1437 relate to the establishment of rates in connection with the payment of indebtedness constituting a lien upon the system. Although not a part of the same Act, we find relevant T.C.A. 6–604 which authorizes a municipality to extend the services of its utilities beyond its corporate limits but provides that in such event the municipality "shall establish proper charges for the services so rendered so that any such outside service be self-supporting".

With respect to the establishment of rates, the common law is concisely stated in 94 C.J.S. Waters § 297 (1956) at page 202:

Where water furnished is all supplied from the same sources, and is supplied to several contiguous communities embraced in one general district, with no unreasonable extensions to serve lean territory or other elements creating material difference in cost, a uniform rate for the entire territory is indicated and ordinarily justified; but it is not essential that all rates throughout a large territory served from a single water system be the same, and rates in each part of such territory may be fixed at a level which is fair and reasonable in view of the existing conditions. Moreover, it is not of itself unjust discrimination to furnish water to some consumers at flat rates and to others of the same class at meter or quantity rates, even though the rate by the gallon actually used is ordinarily lower to the former than to the latter; and the imposition on meter-rate consumers of a minimum or "ready to serve" charge, without imposing a like charge on flat-rate consumers, is not necessarily unjust discrimination, since the latter pay a fixed sum whether they use the water or not, and the former may likewise be required to pay for the service of being ready to supply them with such quantity of water as they may desire or need to use.

A classification must, however, in order to be valid, comport with the rule or principle of sound legislative classification, in that there must be some actual difference of situation and condition, bearing a reasonable and just relation to the matter of rates; and an arbitrary or unreasonable classification amounts to unjust discrimination. *Likewise, it is unjust discrimination to differentiate between different services by charging rates for one which are out of all proportion as compared with the rates charged for another, or to impose on one consumer, or class of consumers, losses caused by charging inadequate rates to another consumer or class.* (emphasis added)

██ Viewing Chapter 68 of the Public Acts of 1933 (T.C.A. 6–1408 through 6–1439) as a whole, we do not believe that T.C.A. 6–1423 empowering the City to contract with the District may be construed to defeat the specific obligation with regard to rates imposed by T.C.A. 6–1421. Under the last mentioned Section the City has the duty to establish and maintain just and equitable rates, and it is specifically provided that such rates and charges shall be adjusted so as to provide funds sufficient to pay all reasonable expenses of operation, repair and maintenance, provide for a sinking fund for payment of principal and interest of bonds when due, and maintain an adequate depreciation account. It is further provided that such rates may be readjusted as necessary from time to time. Therefore, the City had no power to bind itself to a rate for forty-five years which was not subject to increase to reflect the costs of increased capitalization of the system. The legislature imposed upon the City a continuing duty to revise rates to enable the system to be financially self-sufficient while maintaining an equitable rate structure. That portion of Section no. 5 of the contract which precludes consideration of increased capitalization in connection with the modification of rates operates as a bar to this statutorily required flexibility and, therefore, is inconsistent with the explicit legislative intent. Further, such agreement amounts to unjust discrimination under the common law since it imposes on the direct customers of the City residing within its corporate limits losses which are caused by its failure to charge rates to the District which reflect the cost of capital improvements to the system. Accordingly, we find this portion of the contract to be in violation of both the statutory and common law.

██ We do not find that the contract as a whole is ultra vires as insisted by the City. The separate portions thereof are divisible, and the remainder is enforceable independent of the portion of Section no. 5 which is void. See McQuillin, *The Law of Municipal Corporations*, Section 29.95 (3rd ed. 1966); *State v. Holston Trust*, 168 Tenn. 546, 79 S.W.2d 1012 (1935); *Julian v. American National Bank*, 21 Tenn.App. 137, 106 S.W.2d 871 (1937); *City of Del Rio v. Ulen Contracting Corp.*, 94 F.2d 701 (5th Cir. 1938).

We find no reported Tennessee case directly in point, but the facts in the case of *City of Clearwater v. Bonsey*, Fla., 180 So.2d 200 (2d Dist.Ct.App.1965) are strikingly similar to those before us. The County of Pinellas had entered into a thirty year contract with the City of Clearwater to provide water at a specified rate under the authority of a special act of the Florida Legislature which authorized such a contract but imposed upon the County the duty and obligation of prescribing and collecting reasonable rates sufficient to produce revenues to make the system self-sufficient. The court found that the obligation to fix rates was a continuing duty which could not be divested by contract and held that the rate provisions of the contract were void and unenforceable as being in derogation of this duty imposed on the County.

██ The District insists that from and after entry of the Consent Judgment in the former suit the City was estopped from denying the validity of the contract or any portion thereof and cites the aforementioned case of *King v. Brooks* as authority for this position. We note that the Consent Judgment here involved concluded with the provision "all without prejudice to either party". In this respect as well as others, the facts in *King v. Brooks* differ substantially from those now before us and therefore, the holding therein is not controlling in this case. Upon authority of *Young v. Cavitt*, 54 Tenn. (7 Heiskell) 18 (1871) we find and hold that the last quoted phrase had the effect of authorizing either of the parties to file another suit without being met with the legal consequence of a consent judgment on the merits. See also *Brown v. Brown*, 167 Tenn. 567, 72 S.W.2d 557 (1934); *McCarty v. Carolina Lumber Co.*, 134 Tenn. 35, 182 S.W. 909 (1915); *Condon v. Knoxville C. G. & L. R. Co.*, 35 S.W. 781 (Tenn. Ch.App.1895); 50 C.J.S. Judgments § 635 (1947).

██ The fifth prayer of the City's complaint was as follows:

That the Defendant be required by the Court to negotiate and modify its contract to reflect the actual cost of water on an annual basis for Fiscal Year as determined by Certified Audit to determine cost of water as defined by Section 6–1421, Tennessee Code Annotated, including but not limited to interest and depreciation of that capitalization of the City system necessary and required in processing water delivered to the Defendant.

We find that the City is entitled to be heard on this issue and that the Trial Court erred in granting the District's motion for summary judgment and dismissing the complaint.

Therefore, the action of the Trial Court in granting the District's motion for summary judgment is reversed, and the cause is remanded to the Trial Court for further proceedings consistent with this Opinion.

The costs of appeal are taxed to the appellee.

MATHERNE and SUMMERS, JJ., concur.