MAURY COUNTY BOARD OF PUBLIC UTILITIES, City of Mt. Pleasant, and Town of Spring Hill, Plaintiffs–Appellees,

v.

The CITY OF COLUMBIA, Acting By and Through Its BOARD OF PUBLIC UTILITIES OF the CITY OF COLUMBIA, Defendants–Appellants.

The CITY OF COLUMBIA, Tennessee and the Board of Public Utilities of the City of Columbia, Tennessee, in its operation of the Columbia Water System, Plaintiffs–Appellants,

v.

The TOWN OF SPRING HILL, Tennessee, the City of Mt. Pleasant, Tennessee, and the Maury County Board of Public Utilities, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 15, 1993.

Permission to Appeal Denied by Supreme Court June 1, 1993.

Cecil D. Branstetter, Donald L. Scholes, Branstetter, Kilgore, Stranch & Jennings, Nashville, for Maury County Bd. of Public Utilities.

Thomas W. Hardin, Hardin, Ewing, Parkes & Taylor, Columbia, for City of Mt. Pleasant.

Robin S. Courtney, Waller, Lansden, Dortch & Davis, Columbia, for Town of Spring Hill.

Robert L. Holloway, Jr., Columbia, for Columbia Water System.

Billy C. Jack, Columbia, for City of Columbia.

## OPINION

FRANKS, Judge.

The plaintiffs were summarily granted injunctive relief against the City of Columbia ["City"] under the terms of their contracts with the Columbia Water System. The City has appealed. We affirm.

The City operates a water distribution system through its Board of Public Utilities, which does business as Columbia Water System ["CWS"]. Until 1991, CWS offered water service at three rates: urban (inside the city); suburban (outside the city); and private fire protection. The contracts between CWS and each of the plaintiffs provide for water service for a forty year term at the "prevailing rate" for "suburban" water service. For approximately twenty years under the contracts when rate changes were made, a uniform rate was applied to all "suburban" customers.

In 1991, after experiencing an operating loss, CWS recommended a 35% rate increase for all customers, but the City refused and after a study adopted a revised classification and rates for different "suburban" customers. A rate was adopted for urban area customers outside the city limits and a substantially higher rate for a "suburban area" classification. Under these classifications, the plaintiffs are the only customers in the "suburban area".

Before the Chancellor, the plaintiffs argued the rate increase was discriminatory and unenforceable under the terms of their contracts. The City argued the contracts were unenforceable because the City was not a party to the contracts and the contracts attempted to limit the City's statutory rate-making powers. The Chancellor granted plaintiffs relief, holding the city could charge the plaintiffs no rate greater than that charged to other customers outside the city limits, pursuant to the terms of the contracts.

The city concedes the Board of Public Utilities has operated CWS pursuant to city ordinance No. 51 and T.C.A. § 7–35–401 *et seq.*, since the 1930s. The statutory scheme gives the Board broad powers to operate CWS, including the power to contract. Section 7–35–412 states in pertinent part:

> **"7–35–412. Powers and duties of board.**—The board of waterworks and/or sewerage commissioners, constituted and appointed as provided herein and herein referred to as the board, has the power to take all steps and proceedings and to make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this part, subject only to limitations on matters requiring approval by the governing body of the city or town in question...."

Among the limitations referenced in this section is the power to set and adjust rates, which power is vested in the City. T.C.A. § 7–35–414. A city may also contract to provide water service to another city directly. § 7–35–416. The City of Columbia insists that it is not bound by the service contract to its three suburban customers, because the contracts were executed by the Board, not the City, and because the contracts purportedly prevent the City from regulating the rates under subsection 414.

■■■ The City's contention is without merit. The statute provides the City may contract on its own or act through the Board it has appointed. Indeed, in more recent contracts with industrial customers, the City acknowledges this relation outright.[1] Neither does case law support the City's position. Generally, a governmental entity cannot deprive itself by contract of inherent powers necessary to the performance of its functions or duties imposed on it by a prior statutory provision. *Batson v. Pleasant View Utility Dist.*, 592 S.W.2d 578 (Tenn.App.1979). Hence, when a city contracted to provide water services at a rate which could not be increased to reflect cost of increased capitalization of the water system, the contract provision on rates was unenforceable. That part of the contract which precluded a rate increase for increased capitalization acted as a bar to the City's statutorily required flexibility and discriminated against the City's direct customers not covered by the agreement. *City of Parsons v. Perryville Utility District*, 594 S.W.2d 401 (Tenn.App.1979).

However, the *Parsons* court noted that the contract as a whole was not ultra vires. Indeed, in situations more closely analogous to this case, Tennessee Courts have enforced other kinds of rate provisions in water service contracts. In *Bybees Branch Water Association v. Town of McMinnville*, 206 Tenn. 372, 333 S.W.2d 815 (1960), McMinnville contracted with out-of-city users to provide water at the same rates as those for inner city users. When a new Board of Aldermen decided to raise rates on users outside the city limits, these users sued under the terms of the contract. Upholding the agreement, the

---

1. Dupont contracted with "the City of Columbia, Tennessee, operating the Columbia Water System, acting by and through its Board of Public Utilities...." Also a contract with Saturn contains similar language.

Court held that when a municipality operates a utility, it operates it in a proprietary capacity and is held to the same standard as a private corporation. 206 Tenn. at 374, 333 S.W.2d 815. Similarly, in *Batson v. Pleasant View Utility Dist.*, 592 S.W.2d 578 (Tenn.App.1979) land developers contracted with a utility district for specific elements of service at standard rates. When the utility attempted to add an additional charge for an element of service not mentioned in the contract, the developer sued for breach and prevailed. This Court noted the general rule that while a city may not contract away its statutory powers, it cited *Bybees*, and held this principle was not dispositive. State laws permitting a municipality to contract in its proprietary capacity, suspend its powers to regulate rates during the contract period, the Court continued. Moreover, it concluded agreeing to provide an element of service without charge simply did not affect the municipality's power to alter rates.

In this case, the plaintiffs' contracts with the City of Columbia do not prevent the City from raising water rates, as it has already done twice in the last decade. The contractual provisions merely ensure that the plaintiffs' increase will be at the "prevailing rate" for out-of-city users. These provisions are enforceable. The law clothes the Board with the power to execute such contracts, and their terms do not prohibit rate increases, but only prevents the City from varying the terms of the contract to charge rates other than in the manner provided in the contracts.

We find it unnecessary to address the remaining issues and affirm the judgment of the Trial Court and remand at Appellants' cost.

TODD, P.J., and CANTRELL, J., concur.