IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 7, 2025 Session

## CYNTHIA THOMPSON ET AL. v. STORMY W. MOODY ET AL.

**Appeal from the Circuit Court for Madison County**
**No. C-23-223      Joseph T. Howell, Judge**
_____

**No. W2024-01225-COA-R3-CV**
_____

Following an automobile accident, Appellant filed a complaint for negligence and personal injuries against appellees, the at-fault driver and her husband. Appellees moved for summary judgment, arguing that appellant's claims should be dismissed because she settled with appellees' insurance carrier and released her claims against them prior to filing suit. The trial court granted the motion for summary judgment. Because there are disputes of material facts concerning whether appellant agreed to settle and release her claims, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Adam H. Johnson, Memphis, Tennessee, for the appellant, Darlene Middleton.

Bradford D. Box and Reagan N. Brock, Jackson, Tennessee, for the appellees, Stormy W. Moody, and Robert S. Moody.

### OPINION

### I. Background

On September 6, 2022, Appellant Darlene Middleton was involved in an automobile accident in Jackson, Tennessee. The at-fault driver, Stormy W. Moody, crossed into oncoming traffic and hit Ms. Middleton's vehicle. That day, Appellant received medical treatment, and two days later, she presented at Jackson-Madison County General Hospital, complaining of knee pain. One week later, Appellant was seen at West Tennessee Bone

and Joint for knee pain. Appellant continued to seek medical treatment for her knee pain and, in May 2023, underwent surgery on her right knee. Appellant was released from treatment on August 15, 2023.

Before she underwent surgery and before she was released from treatment, on September 12, 2022, Appellant spoke, by telephone, with Charmichael Jefferson, a representative from Progressive Casualty Insurance Company ("Progressive"), Ms. Moody's insurance carrier. Mr. Jefferson, on behalf of Progressive, offered to pay Appellant $1,000.00 and an additional $5,000.00 for medical expenses. On October 17, 2022, Appellant spoke, by telephone, with Mr. Jefferson again, and he renewed the offer to pay her $1,000.00 and an additional $5,000.00 for medical expenses. During this conversation, Appellant asked for $150.00 for reimbursement of her co-pay expenses. Mr. Jefferson agreed and emailed Appellant instructions for accessing the agreed-upon funds.

On July 21, 2023, a Progressive Senior Claims Specialist, Lauren Lieberman, emailed Appellant's attorney and another attorney representing another party injured in the accident. In the email, *discussed further infra,* Ms. Lieberman explained that Ms. Moody's policy limits were "$25,000.00 person/$50,000.00 occurrence." Thereafter, Progressive made "a global policy limits offer under the bodily injury coverage in the amount of $50,000.00 for this claim." Ms. Lieberman directed the attorneys for Appellant, Cynthia Thompson, and Nicholas Meyers to apportion the $50,000.00 policy limit between the three of them and advise her of the amounts payable to each person.[1]

On August 17, 2023, Appellant filed a complaint seeking $70,000.00 in damages from Ms. Moody and her husband, Robert Moody, (together with Ms. Moody, "Appellees").[2] On April 11, 2024, Appellees filed a motion for summary judgment and to enforce settlement. Appellees argued that Appellant's claims should be dismissed because Appellant settled with Progressive and released her claims against Appellees prior to filing suit. On June 10, 2024, Appellant filed a response, wherein she asserted that the settlement was unenforceable because she did not understand the terms of the agreement—particularly those terms regarding release of her claims, *see discussion infra*.

On June 21, 2024, the trial court heard the motion for summary judgment and, by order of August 7, 2024, granted it. Specifically, the trial court found that "[b]ecause [Appellant] made Progressive a counter-offer of settlement, which was accepted by Progressive, and then consideration was given by Progressive and taken by [Appellant], a valid and enforceable settlement agreement was reached between [Appellant] and Progressive." The trial court concluded that the settlement agreement precluded

---

[1] It appears from this email that Ms. Thompson and Mr. Meyers also had claims against Ms. Moody arising out of this accident.

[2] Ms. Thompson is also listed as a plaintiff in the complaint. This appeal does not involve Ms. Thompson's claims against Appellees.

Appellant's claims. Having determined that the settlement was valid and enforceable, the trial court ordered Appellant to sign a release of her claims. She appeals.

## II. Issue

The sole issue for review is whether the trial court erred in granting Appellees' motion for summary judgment.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "When a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* [*Ltd. v. Zenith Radio Corp*.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

## IV. Analysis

The crux of the motion for summary judgment was that the complaint should be dismissed because Appellant released her claims against Appellees as part of a settlement agreement with Progressive. It is undisputed that Appellant accessed a $1,150.00 payment from Progressive. It is also undisputed that Appellant never executed a release of her claims.[3]

The law concerning settlement agreements is clear; these "agreements are contracts between the parties, and the rules governing the interpretation of contracts apply to [them]." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012) (citing *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012)). An enforceable contract "must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991) (citing *Johnson v. Cent. Nat'l Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962)); *see also Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 675 n.8 (Tenn. Ct. App. 2007) ("The legal mechanism by which parties show their assent to be bound is through offer and acceptance."); Restatement (Second) of Contracts §§ 17, 22 (explaining that a valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance). There is a "meeting of the minds" when the parties are in mutual assent to the terms. *In re Estate of Josephson*, No. M2011-01792-COA-R3-CV, 2012 WL 3984613, at *2 (Tenn. Ct. App. Sept. 11, 2012). As this Court has explained,

> [t]he contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences regarding continuation or modification of the original contract might reasonably be drawn.

*Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) (citing *Batson v. Pleasant View Utility Dist.*, 592 S.W.2d 578, 582 (Tenn. App. 1979); *Balderacchi v. Ruth*, 256 S.W.2d 390, 391 (Tenn. Ct. App. 1953)).

As the party moving to enforce the agreement on summary judgment, Appellees had the burden of proving two facts: (1) the existence of a valid and enforceable settlement agreement; and (2) that a term of the agreement was the release of Appellant's claims against Appellees. *See* Tenn. R. Civ. P. 56.04. To meet their burden at the summary judgment stage, Appellees were required to submit a statement of undisputed material facts

---

[3] For completeness, we note that Progressive has not paid $5,000.00 towards Appellant's medical bills. At oral argument, Appellees' attorney stated that Progressive was holding these funds until Appellant signed a release. Thus, it appears that Progressive has yet to provide full satisfaction under the alleged settlement agreement.

"to assist the [c]ourt in ascertaining whether there [were] any material facts in dispute," *i.e.,* whether there was any dispute as to the existence of the settlement agreement and/or its terms. Tenn. R. Civ. P. 56.03. Our rules provide that "[e]ach [material] fact shall be set forth in a separate, numbered paragraph [and] shall be supported by a specific citation to the record." Tenn. R. Civ. P. 56.03. As the party opposing the motion for summary judgment, Appellant was required to submit a "response to each fact set forth by [Appellees] either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed." Tenn. R. Civ. P. 56.03. Again, each disputed fact required a specific citation to the record to support the allegation. Tenn. R. Civ. P. 56.03. Appellant was also allowed to respond with additional facts that she deemed were material and demonstrated the existence of a genuine issue that required a trial. Tenn. R. Civ. P. 56.03. Each of these disputed facts was required to be set out in a numbered paragraph with specific citations to the record. Tenn. R. Civ. P. 56.03. "The purpose of these requirements is to 'assist the Court in focusing on the crucial portions of the record' in determining whether there is a genuine issue requiring a trial on the merits." ***Owens v. Bristol Motor Speedway, Inc.***, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001) (quoting Advisory Committee Comment to Tenn. R. Civ. P. 56.03).

Appellees submitted the following relevant statements of allegedly undisputed material facts:

2. On September 12, 2022, [Mr.] Jefferson, a representative of [Appellees'] automobile liability insurer, [Progressive], extended a settlement offer to [Appellant] for her claim for $1,000, plus the payment of medical expenses incurred to date of Five Thousand Dollars and 00/100 ($5,000). (Aff. of Charmichael Jefferson, ¶ 5 attached hereto as Exhibit A).

3. On October 17, 2022, Mr. Jefferson extended the offer to [Appellant] a second time. [Appellant] in turn made a counter[-]offer to include all terms from the previous offer but also requesting that her $150 co-pay be reimbursed as well. (Aff. of Charmichael Jefferson, ¶ 6).

4. On October 17, 2022, Mr. Jefferson, on behalf of Progressive, agreed to [Appellant's] counter-offer and sent [Appellant] an email with instructions to access the settlement funds and to deposit the funds into [Appellant's] account. (See payment receipt attached as Exhibit B).

5. [Appellant] accessed and obtained the settlement funds via the email she received from Progressive with the instructions on how to access those funds. (See Exhibit B).

6. [Appellant] never returned the settlement funds she received nor informed

Progressive of any repudiation of the settlement agreement.

7. [Appellant] did not execute a release when she obtained the settlement funds.

8. [Appellant] filed this lawsuit nearly a year after she had already received settlement funds for her claim. (See Pl.'s Compl. and Ex. B).

To support the foregoing statements, Appellees attached only two exhibits: (1) Mr. Jefferson's affidavit; and (2) a receipt showing that Appellant accessed the funds. Relevant here, Mr. Jefferson's affidavit stated:

4. In September 2022, I was assigned to handle and process [Appellant's] claim for bodily injury following a motor vehicle collision.

5. On September 12, 2022, I extended a settlement offer to [Appellant], via telephone, for $1,000, plus the payment of her medical expenses incurred.

6. On October 17, 2022, I re-extended the above-mentioned settlement offer to [Appellant] via telephone. During this conversation, [Appellant] made a counter[-]offer to include all the terms of her previous offer, but to additionally request that her $150 co-pay be reimbursed. I accepted the terms of this counter-offer.

7. After I accepted the terms of [Appellant's] counter[-]offer, I sent an email to [Appellant] which included a release and instructions to access the settlement funds. [Appellant] accessed and received the settlement funds because payment shows as received and deposited through Progressive's system.

8. [Appellant] did not contact Progressive after the settlement agreement was reached and the money was received and accessed by her. Progressive did not receive any communication or notice from [Appellant] until Progressive received notice of [Appellant's] Complaint.

The second exhibit is the following receipt showing that Appellant accessed the funds:

| PAYMENT ██████ | | | |
|---|---|---|---|
| **Payee:** DARLENE MIDDLETON | **Payment Date** | | 10/17/2022 |
| | **Total Payment Amount** | | $1,150.00 |
| | **Total Number of Invoices** | | 1 |
| If you have any questions regarding this payment, please call us at 1-800-274-4499. | | | |

| Details | | | | | |
|---|---|---|---|---|---|
| **Claim Number:** ██████ | **Name:** MIDDLETON, DARLENE | **Date of Loss:** 09/06/2022 | **Invoice Number:** ██████ | **Company:** Progressive Casualty Insurance Company | |

| Type | Description | Coverage | Reference | Identifier | Service Dates | Deductible | Payment Amount |
|---|---|---|---|---|---|---|---|
| Injury | Full and Final Settlement of all Bodily Injury Claims | BI | N/A | MIDDLETON, DARLENE | N/A | $0.00 | $1,150.00 |

| Total Payment Amount | | $1,150.00 |
|---|---|---|

It is unclear whether this receipt was emailed to Appellant after she accessed the funds or whether it was an internal receipt that automatically populated in Progressive's system.

Notably absent from the statement of undisputed material facts is any fact concerning Appellant's alleged *agreement to release her claims*. Rather, paragraph 7 provides that "[Appellant] did not execute a release when she obtained the settlement funds." In Mr. Jefferson's affidavit, the only mention of a release is his statement that he sent an email to Appellant "which included a release[.]" Mr. Jefferson does not state that he discussed the release of Appellant's claims with her. Although the receipt description provides "Full and Final Settlement of all Bodily Injury Claims," it does not appear that this receipt was sent to Appellant *before* she accessed the funds. Neither a recording of the telephone conversation between Mr. Jefferson and Appellant nor the email from Mr. Jefferson to Appellant appears in the record. Indeed, at oral argument, Appellees' attorney admitted that no recording of the telephone call exists, and she has never seen the email that Mr. Jefferson sent to Appellant.

In her response, Appellant disputed Appellees' characterization of her discussions with Mr. Jefferson as a "settlement offer." Appellant alleged that, "[a]s [she] was still undergoing medical treatment for her injuries sustained in the subject wreck, she believed Progressive was offering money to help pay her medical bills." In support of her averment, Appellant submitted her own affidavit, which provides, in relevant part:

5. In October 2022, I spoke by telephone with a representative of Progressive regarding my claim relating to the September 6, 2022 wreck.

6. In that telephone conversation, the representative of Progressive stated that

they would pay me $1,000.00 related to my claim.

7. In response, I asked that a $150.00 co-pay be included in that amount as well.

8. At the time of this telephone conversation, I believed that this amount was to help pay some of my medical bills. It was not my intention that this money settle my claim against [Appellees].

9. ***The representative from Progressive did not explain that this amount was to fully settle my claim against [Appellees]. If the representative had explained that, I would have declined the money.***

\*\*\*

17. At no time did I execute a written release with respect to my claims with Progressive.

(Emphasis added). Appellant also submitted a statement of undisputed material facts, alleging in part that:

5. In July 2023, Progressive extended its policy limits of $50,000 per accident to three claimants: [Appellant], [Ms.] Thompson, and [Mr.] Meyers. (See Exhibit B to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment).

As support for this alleged fact, Appellant attached an email from Ms. Lieberman, Progressive's Senior Claims Specialist, to Appellant's counsel. Ms. Lieberman's email stated:

This policy provides coverage with limits of $25,000.00 person/$50,000.00 occurrence. Progressive Casualty Insurance Company is extending a global policy limits offer under the bodily injury coverage in the amount of $50,000.00 for this claim. Please discuss and divide the limits offer amongst your clients [Mr.] Meyers, [Ms.] Thompson, and [Appellant], with no more than $25,000.00 going to one person and advise me of the amounts.

Please alert us of the amounts you would like attributed to each person's individual claim. At that time, the appropriate releases will be forwarded to you. A copy of our declarations page is enclosed.

These offers are contingent [upon] our receipt of any applicable UIM waivers and are inclusive of any/all medical liens.

(Emphasis added). Appellees do not dispute this email or its contents. They aver that Appellant's "name was included on the offer because the other two claimants would have to know that they would not be entitled to $25,000[.00] each because a portion of the policy limits had already been paid to [Appellant], and because [Appellant] had not yet signed a settlement release."

In their appellate brief, Appellees state: "The email from Progressive to [Appellant] with instructions on how to access her money included a settlement release that read 'FULL RELEASE OF ALL CLAIMS.'"[4] As noted above, this alleged fact was not included in the statement of undisputed material facts that Appellees submitted to the trial court with their motion. Indeed, the record citation provided in Appellees' brief to support this "fact" is neither a citation to the statement of undisputed material facts nor a citation to Mr. Jefferson's affidavit. Rather, it is a citation to Appellees' counsel's oral argument at the hearing on the motion for summary judgment, to-wit:

> Trial Court: On the release, is it disputed that the release was sent, just not signed?
>
> Appellees' Attorney: Your Honor, if I may, I have a copy of what was sent to her. It was just given to me by my adjuster. I have a copy for [Appellant's] counsel and a copy for you as well. This was sent to her in the email that allowed her to input her bank account information. Which, on that release, it says full and final settlement of her claims. She just failed to sign it. And, again, that was sent to her on October 17th when the agreement was reached. She never told Progressive, Hey, I don't – I'm not settling this for a full and final settlement. You know, she never questioned it. She just accessed the bank account information. And then many months later, she hired her attorney.

The document Appellees' counsel provided to the trial court was not included as an exhibit in support of the motion for summary judgment; it was not entered into evidence at the hearing on the motion, and it does not appear in the record. Thus, the exact content of the document is unclear to this Court. Nonetheless, the trial court relied on it in granting summary judgment. In its oral ruling, the trial court stated:

> I note that on the body of that email, it said full and final settlement of all bodily injury claims. Again, that was sent with the release, and then there was no further communication between the parties.

---

[4] In their brief, Appellees clarify that the document containing the "FULL RELEASE OF ALL CLAIMS" language is a separate document from the payment receipt, discussed above, which contains the language "Full and Final Settlement of all Bodily Injury Claims."

- 9 -

In its written order, the trial court found:

> 4. On October 17, 2022, Mr. Jefferson, on behalf of Progressive, agreed to [Appellant's] counter-offer and sent [Appellant] an email with instructions to access the settlement funds **and also sent [Appellant] a settlement release which read "Full Release of All Claims**."

(Emphasis added).

At oral argument before this Court, Appellees' counsel was asked if the email Mr. Jefferson sent to Appellant is part of the record, and Appellees' counsel confirmed it was *not*. Appellees counsel stated that the only portion of the record referencing a release is the above section of the transcript from the hearing on the motion for summary judgment. When this Court clarified, "So, you don't have an email we can look to that indicates that this represents a full and final settlement?" Appellees' counsel stated: "I don't. That might be something that we can ask Progressive for and supplement to the Court if it is available, but it is not something that I have ever had in my possession[.]" Thus, according to Appellees' counsel, the document that was shown to the trial court was *not* the email Mr. Jefferson sent to Appellant, but appears to have been a *copy* of what is *generally* sent to persons who settle claims with Progressive. Regardless, as discussed above, it was not included as an exhibit in support of Appellees' motion for summary judgment, and it is not in the record. Accordingly, it was error for the trial court to rely on the document when deciding the motion for summary judgment. *See **Green***, 293 S.W.3d at 513 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215-16 (Tenn. 1993); Tenn. R. Civ. P. 56.06) ("For facts to be considered at the summary judgment stage, they must be included in the record, Tenn. R. Civ. P. 56.03, and they must be admissible in evidence.").

As discussed, *supra*, an enforceable contract "must result from a meeting of the minds," ***Peoples Bank of Elk Valley***, 832 S.W.2d at 553, which occurs when the parties mutually assent to the terms of the contract. ***In re Estate of Josephson***, 2012 WL 3984613, at \*2. This critical element cannot "be accomplished **by the unilateral action of one party**[.]" ***Jamestowne on Signal, Inc.***, 807 S.W.2d at 564 (citing ***Batson***, 592 S.W.2d at 582; ***Balderacchi***, 256 S.W.2d at 391) (emphasis added). As the party moving for summary judgment, it was Appellees' burden to show that Appellant and Progressive mutually assented to: (1) a settlement agreement; and (2) Appellant's release of her claims as a term of the agreement. Whether there was a meeting of the minds as to the foregoing are material facts for purposes of summary judgment. *See **Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) ("A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed."). From our review, Appellees failed to meet their burden. The statement of undisputed material facts and Appellees' supporting evidence fail to show that: (1) Mr. Jefferson discussed a release with Appellant as part of the alleged settlement negotiations; and (2) Appellant agreed to

release her claims. At best, the evidence demonstrates that Progressive attempted to unilaterally incorporate a release into the alleged agreement. Mutual assent cannot "be accomplished *by the unilateral action of one party*[.]" *Jamestowne on Signal, Inc.*, 807 S.W.2d at 564. Appellees' failure to meet their burden is fatal to their motion for summary judgment. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000)) (explaining that if the party moving for summary judgment fails to meet its burden, then the nonmovant's burden to produce specific facts to the contrary is not triggered and the motion for summary judgment fails). Although the burden of production did not shift to Appellant, she provided an affidavit that clearly creates a dispute of material fact concerning whether Mr. Jefferson explained that the funds offered was in full settlement of her claim or simply for payment of some of her medical expenses incurred to date. Furthermore, the email from Ms. Lieberman also creates a dispute as to whether *Progressive* even believed it had fully settled Appellant's claims. For example, the email contains no mention of the alleged settlement with Appellant and appears to indicate that Appellant would receive additional compensation. In resolving motions for summary judgments, courts accept the evidence presented by the nonmoving party as true, allow all reasonable inferences in that party's favor, and "resolve any doubts about the existence of a genuine issue of material fact in favor" of the nonmoving party. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019). Accepting Appellant's evidence as true and drawing all reasonable inferences in her favor, we conclude that there are disputed material facts concerning whether Appellant agreed to a settlement and to a release of her claims against Appellees. Accordingly, Appellees are not entitled to summary judgment, and we reverse the trial court's order granting same.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellees, Stormy W. Moody, and Robert S. Moody. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE
