The **PEOPLES BANK OF ELK VALLEY**, Plaintiff–Appellee,

v.

**CONAGRA POULTRY COMPANY**, Defendant–Appellant,

**Michael W. Armstrong, Donna S. Armstrong, and Harold Armstrong, Defendants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 6, 1991.

Application for Permission to Appeal Denied by Supreme Court March 23, 1992.

Richard J. McAfee, Stacy Blount Divine, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Chattanooga, for plaintiff-appellee.

William G. Colvin, Shumacker & Thompson, Chattanooga, for defendant-appellant.

OPINION

LEWIS, Judge.

Plaintiff, The Peoples Bank of Elk Valley (Bank), filed its complaint against ConAgra Poultry Company (ConAgra) and sought a declaratory judgment determining the rights and obligations of the parties pursuant to an alleged agreement between the parties. The Bank also sought a money judgment against defendants, Michael W. Armstrong, Donna S. Armstrong and Harold Armstrong, on notes executed and delivered by these defendants to the Bank.[1]

ConAgra answered, denying all material allegations of the complaint, and filed a counterclaim in which it sought damages from the Bank for the Bank's alleged breach of its agreement with ConAgra.

Subsequently, the Bank filed a motion for summary judgment and, after hearing arguments and considering the entire record which included affidavits filed by each party, the court rendered judgment for the Bank on its motion for summary judgment after finding there was no genuine issue of material fact and that the Bank was entitled to judgment as a matter of law.

The pertinent facts are as follows:

Mike's Meats, owned by defendant Michael Armstrong, was in the business of processing and selling poultry and red meat products in the Eastern and Southeastern United States, including Tennessee.

Mike's Meats maintained a banking relationship with the Bank from the Spring of 1988 until Mike's Meats filed a Chapter 7 Petition in Bankruptcy on 20 June 1989. Mike's Meats' loans by the Bank were secured by assets of the company, including inventory, accounts receivable, equipment, fixtures, real estate and some motor vehicles. The loans were also guaranteed by defendants.

The Trustee in Bankruptcy, after the filing for Chapter 7 bankruptcy by Mike's Meats, abandoned all assets and the assets

1. Defendant Michael Armstrong is the owner of Mike's Meats and defendants, Donna S. Armstrong and Harold Armstrong signed guaranties for notes executed by Michael Armstrong as the owner of Mike's Meats. Judgment has not been rendered for or against these defendants. The judgment rendered against ConAgra was made final pursuant to Tenn.R.Civ.P. 54.02.

were later sold by the Bank and the proceeds applied to Mike's Meats outstanding Bank debt. At the time Mike's Meats filed its Chapter 7 petition, the Bank filed a proof of claim in the amount of $405,655.53. After applying all proceeds from the sale of its collateral, there was a deficiency in excess of $300,000.00.

ConAgra alleges in its counterclaim that the Bank agreed to honor checks drawn on Mike's Meats and payable to ConAgra even if Mike's Meats did not have sufficient funds to pay the checks, and that the Bank has refused to honor the checks in violation of the agreement.

Sometime prior to April 1988, ConAgra and Mike's Meats entered into an agreement for Mike's Meats to purchase from ConAgra unprocessed chicken and chicken parts. Initially the sales were on an open account basis with payment due within fourteen days after delivery. Throughout 1988 ConAgra made deliveries to Mike's Meats at least three times a week under this agreement.

In April 1988, Mike's Meats established a banking relationship with the Bank. This relationship was established because Mike's Meats anticipated a greatly expanded business from one of its largest customers and concurrent expansion of its plant and equipment to handle the increased business.

In the Fall of 1988, Mike's Meats' orders from ConAgra began to increase and, due to delays in payment, ConAgra placed Mike's Meats on a C.O.D. basis. By February 1989, Mike's Meats was indebted to ConAgra in the approximate sum of $57,000.00.

ConAgra alleges that at a meeting in March 1989 the Bank, in consideration for ConAgra agreeing to continue to furnish unprocessed chicken to Mike's Meats, agreed to advance funds to Mike's Meats to allow Mike's Meats to pay off ConAgra's preexisting indebtedness of $57,031.11. The Bank would require Mike's Meats to pay ConAgra by check for each shipment and the Bank would honor and pay each check when deposited by ConAgra. ConAgra agreed to hold each check tendered by Mike's Meats for a period of seven calendar days and not sell more than an average of 200 cases of chicken breasts per day to Mike's Meats.

On 29 March 1989, ConAgra's export sales credit manager, Mr. Bill Webb, wrote the following letter to the Bank Senior Vice President, Mr. George Massey.

As per our phone conversation, Mike Armstrong has made a proposal to ConAgra that he will pay off the old debt ($57,031.11) and continue to issue ConAgra a check for product delivered on day of delivery, dated day of delivery. ConAgra is then to hold that check for 7 days from delivery date before depositing in bank.

I also understood that we are to limit Mike's Meat purchases to no more than an average of 200 cases of breast per day.

It was my further understanding that checks written to ConAgra by Mike's Meats under the above conditions would be honored by the bank.

Any changes in the above, the party making the change will notify the other party in writing.

On 15 June 1989, Bank Senior Vice President Massey responded with the following letter:

Reference your letter dated March 29, 1989, this is to advise you that upon notice of negative elements relating to the viability of Mike's Meats, Inc., this Bank has chosen, effective immediately, to no longer honor checks drawn upon the accounts of Mike's Meats, Inc., as a matter of a course of dealing.

ConAgra contends that the conversations between representatives of the Bank, ConAgra and Mike's Meats, along with the foregoing letters, constitute a valid and enforceable contract among the parties such that ConAgra can recover damages from the Bank for breach of contract. ConAgra specifically contends that the Bank agreed to honor checks drawn on Mike's Meats accounts payable to ConAgra regardless of whether funds were available in the account to pay those checks.

Even if we assume that the agreement satisfies the Statute of Frauds, we are of the opinion that the trial court correctly found there was "no genuine issue as to any material fact concerning the claims asserted by ConAgra in its Counter Claim" and properly granted the Bank's motion for summary judgment. Even if we accept the facts as alleged by ConAgra as true, they are insufficient as a matter of law to show an agreement which would create an enforceable contract.

■ In order to enforce a contract in Tennessee, the contract must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced. *Johnson v. Central National Insurance Co. of Omaha*, 210 Tenn. 24, 34–35, 356 S.W.2d 277, 281 (1962). Indefiniteness as to any essential element of an agreement may prevent the creation of an enforceable contract. *Jamestowne on Signal, Inc. v. First Federal Savings and Loan Assoc'n.*, 807 S.W.2d 559, 564 (Tenn.App.1990). In *Jamestowne*, the Jamestowne corporation sued First Federal for breach of a loan commitment to finance a real estate project in its totality. First Federal had a lending agreement with Jamestowne whereby Jamestowne could draw on its line of credit with First Federal in an amount commensurate with the percentage of completion of the project. Soon after the execution of the loan documents, First Federal inadvertently approved larger draw requests than those authorized under the loan documents. When Jamestowne began experiencing substantial cost overruns, officers of Jamestowne met with officers of First Federal to discuss the necessary funding for completion of the project. The agreement reached during this discussion was the subject of the Jamestowne suit.

Evidence was presented to the effect that First Federal had agreed to allow Jamestowne to "build out" the project and that First Federal would provide total funding. When First Federal later refused to advance additional funds, Jamestowne sued for breach of contract. First Federal moved for a directed verdict at the conclu-

sion of Jamestowne's proof and at the conclusion of all the proof. The trial court denied the motions for directed verdict and the jury returned a verdict for Jamestowne. On appeal, First Federal raised the issue that the agreement between the parties was too indefinite to be enforced as a matter of law. In reversing the trial court, this Court stated:

We find, however, that the proof of [Jamestowne], even though accepted as true, is too indefinite to create an enforceable contract as a matter of law. It is well established in this jurisdiction that a contract can be expressed, implied, written, or oral, but an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced. (Citation omitted) The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences ... might reasonably be drawn. *Batson v. Plesent View Utility Dist.*, 592 S.W.2d 578, 582 (Tenn.App. 1979); *Balderacchi v. Ruth*, 36 Tenn. App. 421, 256 S.W.2d 390 (1952).

. . . .

The problem with the agreement between [Jamestowne] and First Federal stems not from what was agreed upon but from the lack of showing of any agreement which contains the essential ingredients to form an enforceable contract. The agreement was intended to cover the loaning of a substantial amount of additional money. However, there is no showing of any of the essential elements of such a loan, such as the amount to be loaned, *the duration of the loan*, how it was to be repaid, the rate of interest to be paid and when, what security, if any, was to be given.

*Jamestowne*, 807 S.W.2d at 564 (emphasis added).

■ If the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there

is no contract. Restatement (2d) Contracts, § 33 (1981). It is difficult for this Court to imagine how the contract alleged by ConAgra could be enforced. Would the Bank be obligated to cover checks written by Mike's Meats into perpetuity?

In *Lyons v. Jones*, 22 Tenn.App. 262, 121 S.W.2d 125 (1938), the Court held that "there had not been a meeting of the minds as to the terms of an agreement and therefore the alleged contract [was] too vague and indefinite for enforcement; and it [was] so unusual and unbusinesslike as to raise a doubt of the seriousness of the contention." 22 Tenn.App. at 269, 121 S.W.2d at 129. We are of the opinion that the same can be said of the alleged contract in this case.

We are of the opinion that the alleged contract in this case is so lacking in definiteness that it "may indicate that the mutual assent required to make or modify a contract is lacking." *Jamestowne*, 807 S.W.2d at 566. Here, the essential terms of the alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken. There is, therefore, no contract.

We have considered each of the issues presented by ConAgra but, because of our holding here, we are of the opinion that it is unnecessary to discuss them further. We therefore pretermit all other issues.

The judgment of the trial court is affirmed with costs assessed to ConAgra and the cause remanded to the trial court for the collection of costs and any further necessary proceedings.

TODD, P.J., and KOCH, J.