IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 17, 2021 Session

## THOMAS A. SMYTHE v. FOURTH AVENUE CHURCH OF CHRIST, INC.

**Appeal from the Chancery Court for Williamson County**
**No. 47328     Joseph A. Woodruff, Judge**

———————————————————

**No. M2020-01190-COA-R3-CV**

———————————————————

This appeal involves a contract issue concerning a purported addendum to a land purchase and sale agreement. The trial court granted the seller's motion for summary judgment holding that there was no mutual assent on at least one material term: whether the modification would include a new date-certain deadline for the diligence period or be open-ended. The buyer appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Joshua R. Denton and Jeremey R. Goolsby, Nashville, Tennessee, for the appellant, Thomas A. Smythe.

Alan D. Hall and Julie G. Hamner, Franklin, Tennessee, for the appellee, Fourth Avenue Church of Christ, Inc.

## OPINION

### I.     FACTS & PROCEDURAL HISTORY

In June 2006, Fourth Avenue Church of Christ, Inc. ("Seller") purchased a twenty-acre property ("the Property") with a fifty-foot access easement. Sometime in 2008, the Property was rezoned for commercial use. Seller eventually offered to sell the Property and posted a "For Sale" sign on the Property with Mr. Douglas Buttrey's contact information. Mr. Buttrey was a member of the Church, a licensed attorney, and was helping to procure a buyer and negotiate the sale of the Property. When Mr. Thomas Smythe ("Buyer") became interested in the Property, he contacted Mr. Buttrey. On April

19, 2017, Seller and Buyer entered into a Land Purchase and Sale Agreement in which Buyer agreed to purchase the Property from Seller.

The Agreement required Buyer to place a refundable deposit of $60,000 in escrow to be held through the course of a sixty-day diligence period. The sixty-day diligence period was then followed by a thirty-day period for closing. The Agreement also noted that Buyer had an interest in simultaneously buying the adjoining eighty-acre parcel, and if both Seller and Buyer agreed to extend the diligence period based on unforeseen issues involving disposition of that eighty-acre parcel, then those issues would be addressed in writing at that time. Upon expiration of the diligence period, Buyer was required to deliver a written decision to Seller's attorney stating whether the $60,000 should be refunded and the contract nullified, or alternatively, whether Buyer had decided to proceed with the closing. In proceeding with the closing, the $60,000 in escrow would become a non-refundable deposit. Particularly, the Agreement provided that written notices and demands may be made by email and recognized that the Agreement was based on "principal to principal" interactions.

On the same day the parties entered into the Agreement, Buyer and Seller entered into the first addendum to the Agreement. The first addendum modified certain provisions within the Agreement. In the first addendum, the parties agreed to the following modifications:

1. Zoning reference in the captions is changed to: Commercial, Thompsons Station;
2. Buyer's ability to terminate the Agreement within the sixty (60) day diligence period is absolute;
3. Seller agrees to deliver a warranty deed conveying title to Buyer at closing;
4. Seller agrees to pay back Greenbelt taxes at closing, if any; and
5. Other than Greenbelt rollback taxes, property taxes to be prorated between Buyer and Seller at closing.

Following the execution of the Agreement and the first addendum, Buyer paid the $60,000 deposit and began conducting due diligence regarding the Property. Securing a new easement appropriate for Buyer's intended commercial use was identified as one of the issues to be addressed during the diligence period.

Throughout the diligence period, Buyer communicated with Mr. Buttrey concerning any issues surrounding the Agreement and the new easement to be obtained. On May 31, 2017, Buyer and Mr. Buttrey held a meeting to discuss securing the new easement from an adjoining landowner. After the meeting, Mr. Buttrey emailed Buyer stating that he intended to reach out to the representative of the adjoining landowner's estate ("the Estate") regarding the new easement.

When it became clear that the new easement would not be obtained within the

diligence period, which was set to expire on June 19, 2017, Buyer emailed Mr. Buttrey suggesting a second addendum that would extend the diligence period. On June 15, 2017, Mr. Buttrey emailed Buyer stating that Seller was willing to approve an extension to the diligence period. On June 19, 2017, because of some confusion between the parties, Mr. Buttrey reiterated by email that the extension to the diligence period had been agreed to by Seller. The parties entered into the second addendum and extended the diligence period to September 1, 2017. At the end of June 2017, Buyer then began independently reaching out to the Estate to discuss the Estate's willingness to execute a waiver of its right of first refusal to purchase the Property and an agreement regarding the new easement. At a meeting between Buyer and the Estate, the Estate's attorney assured Buyer that he did not believe there would be a problem obtaining both the waiver of the right of first refusal and an agreement regarding the new easement.

On August 25, 2017, Buyer emailed Mr. Buttrey suggesting a third addendum. The email stated the following:

> [The Estate's attorney] stated once again that he thought there would be no problem giving us a written confirmation that 1) [t]he Estate will waive any implied rights of refusal and confirm that [Seller] is free to sell their 20 acres at will, and 2) [t]he Estate will give any buyer of that 20 acre parcel the right to purchase a separate "shared access" directly to the [P]roperty off Lewisburg Pike in whatever way proves compliant with governing traffic and zoning issues (assuming of course we are not for whatever reason able to finally purchase the surrounding 80 acres as planned).
>
> I will have Ashcroft[1] confirm that I am going hard subject only to the receipt of those written clarifications so they can be appended to the closing documentation. And having received such, I will within 15 business days then go hard with a full $200,000 (adding another $140,000 to the $60,000 already in escrow).
>
> The process of actually confirming a purchase from [t]he Estate could take another three to four months based on third party determinations on value, and based on [the Estate's executrix] deciding between options including an outright sale and/or a normalized sale contingent to zoning approvals.
>
> . . .
>
> I am suggesting that dated from the point that the $200,000 is put into escrow as a non-refundable deposit, plus 30 business days thereafter, I would assume

---

[1] By "Ashcroft," Buyer was referring to the Ashworth Law Firm where one of his attorneys was employed.

- 3 -

the monthly 6.5% interest payments on your Wells Fargo debt until we have taken out the loan in its entirety. Through that interim you would be free to take the $200,000 and use it as you will, without holding it in escrow.

Please take that up with [Seller's attorney], and I'll ask the lawyers to point out any complications to this format.

As this email reflects, Buyer's proposed third addendum would have accounted for the need to obtain the Estate's waiver of the right of first refusal and an agreement regarding the new easement. Buyer's email provided additional rights to Seller: a requirement for the Buyer to make an additional $140,000 deposit and a requirement for the Buyer to pay Seller's existing interest payments related to the Property. These rights were contingent upon the occurrence of two events: (1) the acquisition of the Estate's waiver of the right of first refusal; and (2) the Estate providing any purchaser of the Property with the right to purchase a separate shared access directly to the Property from Lewisburg Pike. Buyer's email stated that the $60,000 deposit and the additional $140,000 deposit would become non-refundable fifteen days after the occurrence of these two events. However, Buyer's email did not expressly address whether the parties intended to extend the diligence period beyond September 1, 2017.

On August 30, 2017, Seller's Elders[2] held a meeting to consider Buyer's requests. The terms the Elders considered and voted on were reflected in their meeting minutes:

Per a communication from [Mr. Buttrey], we have learned that [Buyer] . . . has requested an extension to his commitment to purchase our property from September 1, 2017 to October 1, 2017. He is willing to add another $140,000 (non-refundable) to his original down payment of $60,000 (now non-refundable). He is also willing to pay our monthly interest payment to Wells Fargo from the date of the additional down payment plus 30 business days until closing. We would, of course, be responsible for the principle [sic] payment on the note to Wells Fargo. Trace H. moved and Mark S. seconded that we accept this offer. The motion carried.

On August 31, 2017, Buyer sent his attorney and Mr. Buttrey another email with Buyer's previous email attached, which stated the following:

Send this to [Seller's attorney] and remind him that I contacted [Seller] through [Mr.] Buttrey with these proposals a week ago, so none of this is news to them: we can't be held accountable for terms essential to the proper closing when we've made every effort possible to engage: now [the Estate's

---

[2] Seller states that it is an incorporated entity governed by a body of officers called Elders (or, alternatively, Shepherds). The Elders also served as the Board of Directors for Seller.

attorney] is engaged and says that he thinks we will go forward, and that [the Estate's executrix] will support the changes as they were discussed before. If there is any reluctance on their part, it's because [the Estate's executrix] is still angry about what she thought was pressure brought by [Seller] by "an appraiser" that said he represented [Seller]. I think he meant Marc Headden, and I suggested that they might have misunderstood, because at one time Marc was working with [Mr.] Buttrey to provide an appraisal.

So the [A]greement's timelines are suspended, because we cannot close without underwriting that depends on these issues being resolved. And hopefully, we are close to doing just that. Or do it verbally. I'm not sure any of them actually understand the importance of resolving these two issues.

Mr. Buttrey then emailed Buyer to inform him of the outcome of the Elders' meeting. Mr. Buttrey's email stated:

Hello Tom[.] All is well and [Seller's] Shepherds agreed last night to your amendment language as submitted. There were some last[-]minute questions but they were resolved last night. We are still on track and we appreciate your patience. I am not a Shepherd but I notified [Seller's attorney] last night of the decision to agree to your new terms.

Mr. Buttrey copied Seller's executive minister and attorney in the email, but did not copy Buyer's attorney. On the morning of September 1, 2017, having not been copied on the email from Mr. Buttrey, Buyer's attorney sent to Seller's attorney a first draft of a memorialized third addendum with terms matching those contained in the Elders' meeting minutes above. In the email transmitting the first draft, Buyer's attorney stated that she was still "awaiting approval . . . from [the Buyer]," but she believed that the first draft reflected the terms of their agreement. Seller's attorney responded that "at first glance, this looks fine to me. I will forward to my clients for their review and approval." Minutes later, Buyer's attorney sent a second email instructing Seller's attorney to hold off on the first draft, because Buyer had reviewed the first draft and advised his attorney that it did not accurately reflect Buyer's intent. Specifically, Buyer's attorney stated that "[w]e are discussing the problem of extending [the] contingency period for a 'date certain' [versus] 'when written assurances from [the] Estate are received.'" Later that day, Buyer's attorney sent Seller's attorney a second draft, which Seller's Attorney noted was "completely different than what was sent this morning and what they communicated to us on [August 30, 2017]." Almost an hour later, Buyer's attorney sent Seller's attorney an email with a third draft stating that it extended the "diligence period to [September 11, 2017] as we discussed." That evening, Seller's president and secretary signed the first draft of the memorialized third addendum. However, Buyer did not agree to the first draft of the third addendum because it did not reflect his intent and was different from what he suggested in his email on August 25, 2017. That night, Buyer's attorney emailed Seller's attorney again

- 5 -

and stated in part that "[Buyer] has asked that I formally notify you that he is not going hard as dated for today. He felt this should be clarified, but was already understood and obvious; explicitly so in the [Seller] approved extension. We just have to straighten out the language in keeping with his original intent."

On September 5, 2017, Seller's attorney emailed Buyer's attorney stating that Seller still wanted to sell to Buyer and was willing to work with Buyer on a reasonable extension to the contract. Seller's attorney explained that "for us to move forward, it is essential for [Buyer] to recognize that at this point and time the $60,000.00 earnest money is non-refundable to him under the terms of the contract. The Due Diligence period has expired and [Buyer] has less than 30 days to close. [Seller] was willing to extend the due diligence period until October 1 as is 'explicitly stated' in the addendum signed by [Seller], however, [Buyer] would not and did not agree to that proposed addendum." Later that day, Seller's executive minister emailed Mr. Buttrey and other persons associated with Seller stating that:

> [Buyer] came by to see me today. From what he shared with me he has good intentions to go through with the purchase and to start paying our full payments. He does have plans for the 20 acres if he doesn't get the 80. [Buyer] claims that what happened on [September 1, 2017], was due to his attorney messing up. [Buyer] did not want to withdraw the contract because that would show a lack of trust.

In negotiations afterwards, Seller communicated its refusal to execute another addendum with an open-ended closing deadline.

On October 10, 2017, there was a meeting between the parties, but no formal agreements were made. However, the parties proceeded to obtain the Estate's waiver of the right of first refusal to purchase the Property, which Seller ultimately obtained in October 2017. In November 2017, Seller expressly represented to its own members and attendees that it had been actively trying to sell the Property for some time and had a contract on the Property with earnest money. On May 8, 2018, Seller advised Buyer that he had until the end of May to close on the Property or Seller would seek a new buyer. Buyer provided evidence that Seller's intention was partly motivated by the prospect of another buyer.

On May 30, 2018, Buyer filed a petition asking the trial court to declare the rights and obligations of the parties under the Agreement and its addenda. After Seller moved to dismiss, Buyer obtained the court's permission to file two amended petitions. When Buyer filed its second amended petition, Seller again moved to dismiss. On October 18, 2018, the trial court denied Seller's motion to dismiss. On November 6, 2018, Seller filed its answer and counter-complaint for declaratory judgment.

- 6 -

On May 10, 2019, Seller filed a motion for summary judgment. Thereafter, Buyer filed a motion for enlargement of time to respond to the motion for summary judgment, to which the trial court entered an order continuing the summary judgment proceedings. On February 25, 2020, Seller filed a motion to show cause why its motion for summary judgment should not be granted. Buyer filed a response in opposition. On March 20, 2020, the trial court ordered Seller's motion for summary judgment to be set for hearing on May 7, 2020, and ordered Buyer to respond to Seller's motion for summary judgment on or before April 27, 2020. However, on April 9, 2020, Buyer filed another motion for enlargement of time arguing that the COVID-19 pandemic had prevented Buyer from completing depositions in-person. The trial court denied Buyer's motion for enlargement of time stating that:

> [Buyer] has been afforded more than sufficient time to conduct discovery. He has failed to explain why affidavits or other evidence to enable him to oppose [Seller's] motion is unavailable to him, but would be available if he were given more time. His reliance on the [Tennessee Supreme Court order extending the briefing schedule] as the equivalent of an order staying motion practice is contrary to the clear purpose of the order. And his personal objection to conducting discovery by electronic means is insufficient to justify further delay.

Buyer then responded to Seller's motion for summary judgment.

On May 28, 2020, the trial court entered a memorandum and order granting Seller's motion for summary judgment. The trial court concluded that there was no genuine issue of material fact regarding the parties' failure to form a complete agreement on all terms essential to a modification of the Agreement. The trial court reasoned that because the parties did not agree to an extension of the diligence period, the second addendum controlled and the thirty-day deadline to close was triggered. Thus, Buyer's failure to close within that thirty days was a default causing his $60,000 to be forfeited under the terms of the Agreement. Following the trial court's decision, Seller filed a motion for leave to file an amended and supplemental counter-complaint and for clarification under Rule 56.05. On June 25, 2020, the trial court entered a supplemental order reiterating its previous ruling on the motion for summary judgment and clarifying that Seller was the vindicated party such that it was entitled to attorney's fees under the Agreement. On August 5, 2020, the trial court entered an order with its determination as to the amount of fees to be awarded and holding that the May 28, 2020 order, the supplemental order on June 25, 2020, and the order on August 5, 2020, collectively constituted a final judgment. On September 2, 2020, Buyer timely filed his notice of appeal.

## II.   ISSUES PRESENTED

Buyer presents the following issues for review on appeal, which we have slightly

restated:

1. Whether the trial court erred in holding that Buyer's August 25, 2017 email did not constitute a valid offer, capable of acceptance, to amend the Land Purchase and Sale Agreement.
2. Whether the trial court erred in holding that Buyer's August 25, 2017 email did not contain all of the essential terms.
3. Whether the trial court erred in holding that the August 31, 2017 email of Mr. Buttrey did not constitute a valid acceptance of Buyer's August 25, 2017.
4. Whether the trial court erred in holding that there was no mutual assent and/or meeting of the minds between the parties.
5. Whether the trial court erred in not granting Buyer's request for a continuance to conduct discovery.

For the following reasons, we affirm the decision of the trial court.

### III.    STANDARD OF REVIEW

On appeal, we review a trial court's decision on a summary judgment motion de novo with no presumption of correctness. *Beard v. Branson*, 528 S.W.3d 487, 494 (Tenn. 2017) (citing *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015); *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 346 (Tenn. 2014)). Therefore, "we make a fresh determination about whether the requirements of Rule 56 have been met." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015); *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. The nonmoving party must then "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* at 265. "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986)). "[W]e accept the evidence presented by . . . the nonmoving party, as true; allow all reasonable inferences in its favor; and resolve any doubts about the existence of a genuine issue of material fact in favor of [the nonmoving party]." *TWB Architects, Inc.*, 578 S.W.3d at 887 (citations omitted).

"We review the trial court's refusal to grant a continuance under Rule 56.07 for an abuse of discretion." *Gilchrist v. Aristorenas*, No. W2007-01919-COA-R3-CV, 2008 WL 4981103, at *4 (Tenn. Ct. App. Nov. 24, 2008) (citations omitted). In doing so, "we give ample deference to the trial court's decision." *Id.* Thus, we will find the trial court to have abused its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

## IV.   DISCUSSION

On April 19, 2017, Seller and Buyer entered into a land purchase and sale Agreement in which Buyer agreed to purchase the Property from Seller. The Agreement provided that written notices and demands may be made by email. Throughout the course of dealing and before Buyer's August 25, 2017 email, the parties entered into two separate addenda that modified certain provisions within the Agreement. The first addendum was made and entered into on the same day the parties entered into the Agreement. In June 2017, Buyer emailed Mr. Buttrey suggesting the second addendum that would extend the diligence period in the Agreement. On June 19, 2017, the parties entered into the second addendum and extended the diligence period to September 1, 2017. The crux of the issues on appeal concerns a proposed third addendum to the Agreement sent by email on August 25, 2017.

As a preliminary matter, we discuss the requirements of a valid contract. The requirements for a valid contract are well settled in Tennessee law: a contract "must result from a meeting of the minds of the parties in mutual assent to its terms, must be based on a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Staubach Retail Serv.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005).[3] As for the requirement of mutual assent, "[t]he legal mechanism by which parties show their assent to be bound is through offer and acceptance." *Moody Realty Co. Inc. v. Huestis*, 237 S.W.3d 666, 675 n.8 (Tenn. Ct. App. 2007). We have defined an offer as "a promise, an undertaking to carry an intention into effect, and not a desire or 'a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received.'" *Johnson v. Herren*, C.A. No. 88-160-II, 1988 WL 119278, at *2 (Tenn. Ct. App. Nov. 10, 1988) (quoting *Talley v. Curtis*, 23 Tenn. App. 129 S.W.2d 1099, 1102 (Tenn. Ct. App. 1939)).

---

[3] This principle of law has remained unchanged in our case law for more than a century. *See Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Higgins v. Oil, Chem. & Atomic Workers Intern. Union, Local No. 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991); *Johnson v. Cent. Nat'l Ins. Co. of Omaha, Neb.*, 356 S.W.2d 277, 281 (Tenn. 1962); *Am. Lead Pencil Co. v. Nashville, C. & St. L. Ry.*, 134 S.W. 613, 615 (Tenn. 1911).

Like a contract, "the modification of an existing contract requires mutuality of assent and meeting of the minds." *Buchholz v. Tenn. Farmers Life Reassurance Co.*, 145 S.W.3d 80, 84 (Tenn. Ct. App. 2003) (citations omitted). In *Buchholz v. Tenn. Farmers Life Reassurance Co.*, this Court reiterated that:

> Modification of an existing contract cannot be accomplished by the unilateral action of one of the parties. There must be the same mutuality of assent and meeting of the minds as required to make a contract. New negotiations cannot affect a completed contract unless they result in a new agreement. And a modification of an existing contract cannot arise from an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed.

*Id.* (citing *Balderacchi v. Ruth*, 256 S.W.2d 390, 391 (Tenn. Ct. App. 1952) (internal citations omitted)). In order to determine mutuality of assent, we assess "the parties' manifestations according to an objective standard." *Moody Realty Co., Inc.*, 237 S.W.3d at 674 (citing *Staubach Retail Serv.-Se., LLC,* 160 S.W.3d at 524 (citations omitted)). We have stated that:

> The primary test as to the actual character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded. It does not matter by what name the parties chose to designate it. But the existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances.

*Gurley v. King*, 183 S.W.3d 30, 43 (Tenn. Ct. App. 2005) (citing 17 Am. Jur. 2d *Contracts* § 1 (1964)). Therefore, we must determine whether a reasonable onlooker, based upon the parties' outward manifestations, would conclude that Buyer and Seller agreed to be bound to the terms in Buyer's email on August 25, 2017. *Moody Realty Co., Inc.*, 237 S.W.3d at 674.

The trial court concluded that Buyer's August 25, 2017 email and Mr. Buttrey's August 31, 2017 email did not create an enforceable contract as a matter of law because there was no mutual assent on at least one material term: whether the modification would include a new date-certain deadline for the diligence period or be open-ended. The trial court reasoned that the parties' manifestations made it objectively clear that the parties intended to execute a final written instrument reflecting all essential terms and that the parties did not reach an agreement concerning the diligence deadline. We agree.

- 10 -

As for Buyer's email on August 25, 2017, we find that it was not a valid offer and it did not contain all of the essential terms. In Tennessee, "a mere expression of intent or a general willingness to do something does not amount to an 'offer.'" *Gatlin v. Scott*, No. M2018-02293-COA-R3-CV, 2019 WL 4567497, at *2 (Tenn. Ct. App. Sept. 20, 2019) (quoting *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990)). Buyer's email did not rise above "a mere expression of intent or a general willingness to do something." *Id.* That is evidenced in the language of his email. Throughout the email, Buyer stated the following:

> *I will have* Ashcroft confirm that I am going hard subject only to the receipt of those written clarifications so they can be appended to the closing documentation. And having received such, *I will* within 15 business days then go hard with a full $200,000 (adding another $140,000 to the $60,000 already in escrow).
>
> . . .
>
> *I am suggesting* that dated from this point that the $200,000 is put into escrow as a non-refundable deposit, plus 30 business days thereafter, *I would assume* the monthly 6.5% interest payments on your Wells Fargo debt until we have taken out the loan in its entirety. Through that interim *you would* be free to take the $200,000 and use it as you will, without holding it in escrow. (emphasis added)

In closing his email, Buyer stated "[p]lease take that up with [Seller's attorney], and I'll ask the lawyers to point out any complications to this format." "The circumstances presented here show that the agreement was a preliminary negotiation and not a final agreement to which either party intended to be bound." *Gatlin*, 2019 WL 4567497, at *3. Buyer's email "utilized the future tense" regarding the proposed third addendum to the Agreement. *Id.* In *Gatlin v. Scott*, we held that the utilization of future tense "[does] not evidence a *present* offer . . . sufficiently definite to be enforced. While a contract may be formed even when a subsequent final writing is contemplated to memorialize the agreement, the terms allegedly agreed upon . . . did not, at the very least, provide a basis for determining an appropriate remedy in the event of a breach." *Id.*; *see Gurley*, 183 S.W.3d at 43 (noting that the absence of essential terms would support the trial court's dismissal of the breach of contract action).

Furthermore, the communications that unfolded afterward also demonstrate that the terms in Buyer's email were not "sufficiently definite," a requirement to form an enforceable contract. *Staubach Retail Serv.-Se., LLC*, 160 S.W.3d at 524. "To be enforceable, a contract must result from a meeting of the minds, be based on sufficient consideration, and be sufficiently definite.*" Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 774 (Tenn. Ct. App. 2015) (citing *Peoples Bank of Elk Valley v. ConAgra*

*Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991)). "If the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Id.* (citing *Peoples Bank of Elk Valley*, 832 S.W.2d at 553-54; Restatement (2d) Contracts, § 33 (1981)). Buyer's email would have allowed the diligence period deadline to remain open-ended and contingent upon the securing of the Estate's waiver of the right of first refusal and the right to purchase a separate shared access. Buyer's email stated that:

> I am going hard subject only to the receipt of those written clarifications so they can be appended to the closing documentation. And having received such, I will within 15 days business days then go hard with a full $200,000 (adding another $140,000 to the $60,000 already in escrow).

> The process of actually confirming a purchase from [t]he Estate could take another three to four months . . . .

However, Buyer's email did not explicitly extend the diligence period beyond September 1, 2017. In a subsequent email, Buyer stated "[s]o the [A]greement's timelines are suspended, because we cannot close without underwriting that depends on these issues being resolved."

When contemplating whether to enter into a proposed third addendum, the Elders considered and voted on terms different from the terms in Buyer's email. On August 31, 2017, Mr. Buttrey emailed Buyer to inform him that Seller's Elders approved of and agreed to the "amendment language as submitted." On September 1, 2017, Buyer's attorney memorialized the terms in writing and emailed the Seller's attorney the first draft with terms identical to those contained in the Elders' meeting minutes. However, those terms extended the diligence period to October 1, 2017. In the email exchange between the parties' attorneys, Buyer's attorney and Seller's attorney used language that demonstrated the terms of the third addendum were not yet final and still needed the approval of both parties. In the email transmitting the first draft of the memorialized third addendum, Buyer's attorney stated that she was still "awaiting approval . . . from [the Buyer]," but she believed that the first draft reflected the terms of the addendum. Seller's attorney responded that "at first glance, this looks fine to me. I will forward to my clients for their review and approval." Minutes later, Buyer's attorney sent a follow-up email instructing Seller's attorney to hold off on the first draft, because Buyer had reviewed the first draft and advised his attorney that it did not accurately reflect his intent. Specifically, Buyer's attorney stated that "[w]e are discussing the problem of extending [the] contingency period for a 'date certain' [versus] 'when written assurances from [the] Estate are received.'" Later that day, Buyer's attorney sent Seller's attorney a second draft, which Seller's attorney noted was "completely different than what was sent this morning and what they communicated to us on [August 30, 2017]." Almost an hour later, Buyer's attorney sent Seller's attorney an email with the third draft stating that it extended the "diligence period

to [September 11, 2017] as we discussed." After this confusion, Seller's president and secretary signed the first draft of the memorialized third addendum. The terms of the first draft would have extended the diligence period to October 1, 2017. This was in contrast with the suggested terms in Buyer's August 25, 2017 email, which did not address an extension of the diligence period beyond September 1, 2017. Buyer's attorney acknowledged that this was an issue in one of her emails, in which she stated that "[w]e are discussing the problem of extending [the] contingency period." Although Seller signed the first draft of the third addendum, Buyer did not agree to the first draft because it did not reflect his intent and was different from what he suggested in his email on August 25, 2017.

After the first draft of the third addendum was signed by Seller, Buyer's attorney emailed Seller's attorney and stated that "[Buyer] has asked that I formally notify you that he is not going hard as dated for today. He felt this should be clarified, but was already understood and obvious; explicitly so in the [Seller] approved extension. We just have to straighten out the language in keeping with his original intent." On September 5, 2017, Seller's attorney emailed Buyer's attorney stating that Seller still wanted to sell to Buyer and was willing to work with Buyer on a reasonable extension to the contract. Seller's attorney explained that "for us to move forward, it is essential for [Buyer] to recognize that at this point and time the $60,000.00 earnest money is non-refundable to him under the terms of the contract. The Due Diligence period has expired and [Buyer] has less than 30 days to close. [Seller] was willing to extend the due diligence period until October 1 as is 'explicitly stated' in the addendum signed by [Seller], however, [Buyer] would not and did not agree to that proposed addendum." Seller's executive minister even stated that Buyer came to see him and "claim[ed] that what happened on [September 1, 2017], was due to his attorney messing up."

Based on these circumstances, we find that there was uncertainty as to an essential term, the diligence period, and therefore the terms in Buyer's email were not sufficiently definite. "Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain" and "[t]he fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance." *Gatlin*, 2019 WL 4567497, at *3 (citing *Jamestowne on Signal, Inc.*, 807 S.W.2d at 564 (citations omitted)). The parties had differing intentions and failed to reach an agreement on an essential term: whether the diligence period would be extended to October 1, 2017 or become open-ended and contingent upon the securing of the Estate's waiver of the right of first refusal and the right to purchase a separate shared access. This was due in part to the fact that Buyer's email on August 25, 2017 suggesting a third addendum did not address the essential term of extending the diligence period. Consequently, "[w]hen a term is left open for future negotiation, there is nothing more than an unenforceable agreement to agree." *Cadence Bank, N.A.*, 473 S.W.3d at 774; *see Four Eights, LLC v. Salem*, 194 S.W.3d 484, 486 (Tenn. Ct. App. 2005). "It is a fundamental rule of law that an alleged contract which is so vague, indefinite and uncertain as to place

- 13 -

the meaning and intent of the parties in the realm of speculation is void and unenforceable." *Id.* (citations omitted). Because Buyer and Seller failed to reach an agreement to extend the diligence period that expired on September 1, 2017, the second addendum controlled and Buyer had thirty days to close from that date. Accordingly, Buyer's failure to close within that thirty days was a default causing his $60,000 to be forfeited under the terms of the Agreement.

Therefore, we find that the trial court did not err in holding that Buyer's August 25, 2017 email did not constitute a valid offer and did not contain all of the essential terms. Because we find that there was not a valid offer, the issue of whether Mr. Buttrey's August 31, 2017 email constituted a valid acceptance of Buyer's August 25, 2017 email is pretermitted. Likewise, because "[t]he legal mechanism by which parties show their assent to be bound is through offer and acceptance[,]" we find that there was no mutuality of assent and/or meeting of the minds between the parties. *Moody Realty Co. Inc.*, 237 S.W.3d at 675 n.8.

Buyer's final issue on appeal is whether the trial court erred in not granting Buyer's request for a continuance to conduct discovery. As stated before, "[w]e review the trial court's refusal to grant a continuance under Rule 56.07 for an abuse of discretion." *Gilchrist*, 2008 WL 4981103, at *4 (citations omitted). Because "we give ample deference to the trial court's decision[,]" we will find the trial court to have abused its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (citing *Eldridge*, 42 S.W.3d at 85).

On May 30, 2018, Buyer filed its petition asking the trial court to declare the rights and obligations of the parties under the Agreement and its addenda. Seller filed its motion for summary judgment on May 10, 2019. Thereafter, Buyer filed a motion for enlargement of time to respond to the motion for summary judgment, and the trial court subsequently entered an order continuing the summary judgment proceedings. On February 25, 2020, over nine months after its motion for summary judgment, Seller filed a motion to show cause why its motion should not be granted. Buyer filed a response in opposition to Seller's motion to show cause. On March 20, 2020, the trial court ordered Seller's motion for summary judgment to be set for hearing on May 7, 2020, and ordered Buyer to respond to the motion on or before April 27, 2020.

However, on April 9, 2020, nearly eleven months after Seller's motion for summary judgment was filed, Buyer filed another motion for enlargement of time arguing that the COVID-19 pandemic had prevented him from completing depositions in person. Buyer argued that further depositions were needed in order to properly respond to the motion for summary judgment and that COVID-19 had prevented him from taking these depositions. However, Buyer was not prohibited from taking depositions via telephone or videoconference. Rather, Buyer stated that he did not consent to these methods and

vehemently opposed them. Buyer argued that the depositions were document intensive and required numerous exhibits to be reviewed and exchanged throughout the course of the depositions. Furthermore, Buyer stated that he was seventy-three years old, in a high-risk category for COVID-19 complications, and did not possess the technological knowledge or skills in order to participate in the depositions by videoconferencing or other technological means. The trial court denied Buyer's request for continuance to conduct discovery for the following reasons:

> [Buyer] has been afforded more than sufficient time to conduct discovery. He has failed to explain why affidavits or other evidence to enable him to oppose [Seller's] motion is unavailable to him, but would be available if he were given more time. His reliance on the [Tennessee Supreme Court order extending the briefing schedule] as the equivalent of an order staying motion practice is contrary to the clear purpose of the order. And his personal objection to conducting discovery by electronic means is insufficient to justify further delay.

Rule 56.07 of the Tennessee Rules of Civil Procedure "was enacted to serve as a safeguard against an improvident or premature grant of summary judgment by insuring that a diligent party is given a reasonable opportunity to prepare its case." *Fed. Nat'l Mortg. Ass'n v. Daniels*, 517 S.W.3d 706, 714 (Tenn. Ct. App. 2015); *see Kenyon v. Handal*, 122 S.W.3d 743, 753 n.7 (Tenn. Ct. App. 2003) (citations omitted). The rule provides that:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Tenn. R. Civ. P. 56.07.

In *Elaster v. Massey*, we stated "that the trial court did not err in granting summary judgment where the party failed to file an affidavit requesting additional time for discovery or failed to put forth an argument as to how the discovery responses would assist the nonmoving party in arguing the summary judgment motion." *Elaster v. Massey*, No. E2017-00020-COA-R3-CV, 2018 WL 1040112, at *7 (Tenn. Ct. App. Feb. 22, 2018) (citing *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 537 (Tenn. Ct. App. 2012)). The "decision to deny additional time for discovery, in order for the non-moving party to meet summary judgment, 'must be viewed in the context of the issues being tried and the posture of the case at the time the request for discovery is made.'" *Id.* (quoting *Cardiac Anesthesia Servs., PLLC*, 385 S.W.3d at 537-538). "[A] trial court only errs in refusing to grant additional time for discovery prior to the hearing on a motion for summary judgment when the non-moving party can show that 'the requested discovery would have

assisted [the non-moving party] in responding to [the moving party's] motion for summary judgment.'" *Id.* (citing *Cardiac Anesthesia*, 385 S.W.3d at 538). Moreover, the Tennessee Supreme Court has explained the non-movant party's burden as follows:

> If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Id.* at *4 (quoting *Rye*, 477 S.W.3d at 265).

After reviewing the record, we find that the trial court did not abuse its discretion. Buyer failed to demonstrate why the requested discovery would have assisted him in responding to Seller's motion for summary judgment. In Buyer's motion for enlargement of time, he did not identify the deponents he wanted to question, did not explain why he could not obtain affidavits from these unidentified deponents, did not explain what facts he needed to establish in the record, and did not explain how those facts would be material to the resolution of Seller's motion for summary judgment.[4] Additionally, Buyer was afforded adequate time to conduct discovery after the motion for summary judgment was filed, and he was not prohibited from conducting depositions by telephone, videoconferencing, or other technological means. Although Buyer opposed conducting depositions by these methods, his objection was insufficient to justify any further delay despite COVID-19. The trial court had already granted Buyer a previous continuance of the summary judgment proceedings. Furthermore, Buyer's request to conduct additional discovery came nearly eleven months after Seller's motion for summary judgment was filed and nearly two years after this case was filed. Thus, we find that the trial court did not err in denying Buyer's request for a continuance to conduct discovery.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the trial court. Costs of

---

[4] As the trial court noted, Buyer did "state these unnamed deponents [had] been identified by [Seller] as persons with knowledge of discoverable information, and that some of them [had] provided affidavits [Seller had] filed in support of its motion." However, Buyer made "no claim his hoped-for depositions would result in these affiants recanting their affidavit testimony, and deposition testimony merely affirming what the witness [had] previously stated under oath [did] not impress the [trial court] as a worthwhile reason to postpone a hearing on a properly supported summary judgment motion."

this appeal are taxed to the appellant, Thomas A. Smythe, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE